# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
MR. DEE'S INC., et al.      )
                            )
            Plaintiffs,     )
                            )
       v.                   )       1:19cv141
                            )
INMAR, INC., et al.         )
                            )
            Defendants.     )
```

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' four motions to seal (Docket Entry 171 (the "First Sealing Motion"); Docket Entry 173 (the "Second Sealing Motion"); Docket Entry 176 (the "Third Sealing Motion"); Docket Entry 181 (the "Fourth Sealing Motion")) (collectively, the "Sealing Motions"). For the reasons that follow, the Court will (1) deny without prejudice the First Sealing Motion's request to seal "Defendants' Coupon Valuation Chart" (Docket Entry 171-1), (2) deny the remainder of the First Sealing Motion and the entirety of the Second and Third Sealing Motions, and (3) grant in part the Fourth Sealing Motion.

## INTRODUCTION

Plaintiffs seek to redact or maintain under seal various exhibits filed in connection with three motions: (1) Plaintiffs' motion (i) to postpone certain deadlines, (ii) to compel Defendants to produce particular data, and (iii) for a status conference (Docket Entry 166) (the "Discovery Motion"); (2) Plaintiffs' motion for class certification (Docket Entry 150) (the "Certification

Motion"); and (3) Defendants' motion to exclude one of Plaintiffs' experts (Docket Entry 160) (the "Expert Motion").

The First and Fourth Sealing Motions reference exhibits attached to Plaintiffs' memorandum (Docket Entry 167) (the "Discovery Memorandum") and reply (Docket Entry 179) (the "Discovery Reply") in support of the Discovery Motion. (See Docket Entry 171 at 1; Docket Entry 181 at 1.) More specifically, the First Sealing Motion addresses the Discovery Memorandum's Exhibit 10 (Docket Entry 167-10 ("Defendants' Coupon Valuation Chart")), Exhibit 11 (Docket Entry 167-11 ("Coupon Strategy and Industry Issues Report")), and Exhibit 12 (Docket Entry 167-12 ("Coupon Processing Market Pricing Report")). (See Docket Entry 171 at 1.) The Fourth Sealing Motion, in turn, concerns the following documents filed with the Discovery Reply: Exhibit 21 (Docket Entry 179-3 ("Carolina Services Report")), Exhibit 23 (Docket Entry 179-5 ("Dr. Grace's Expert Rebuttal Report")), and Exhibit 24 (Docket Entry 179-6 ("Excerpts from CCC, CMS, and IOS's Financial Statements")). (See Docket Entry 181 at 1–2.)

The Second Sealing Motion targets three exhibits accompanying Plaintiffs' reply (Docket Entry 172) (the "Certification Reply") in support of the Certification Motion. (See Docket Entry 173 at 1.) In particular, the Second Sealing Motion seeks relief as to Dr. Grace's Rebuttal Expert Report (Docket Entry 172-1), Defendants' Coupon Valuation Chart (Docket Entry 172-2),[1] and the Carolina

---

[1] Despite bearing the name "Workbook of Coupon Company (continued...)

Services Report (Docket Entry 172-3). (See Docket Entry 173 at 2.)[2]

The Third Sealing Motion pertains to numerous exhibits that Plaintiffs filed alongside their response (Docket Entry 175) (the "Expert Response") opposing the Expert Motion. (Docket Entry 176 at 1.) Those exhibits consist of Dr. Grace's Expert Rebuttal Report (Docket Entry 175-1), the Carolina Services Report (Docket Entry 175-7), and Defendants' Coupon Valuation Chart (Docket Entry 175-12), as well as Exhibit 3 (Docket Entry 175-3 ("CMS Market Share Report")), Exhibit 6 (Docket Entry 175-6 ("Coupon Processing Marketing Report")), Exhibit 9 (Docket Entry 175-9 ("Coupon Strategy and Industry Issues Report")), and Exhibit 11 (Docket Entry 175-11 ("Coupon Strategy Discussion Document")[3]).

Finally, the Sealing Motions explain that Plaintiffs have redacted portions of the Discovery Memorandum, Discovery Reply, Certification Reply, and Expert Response that quote from or discuss the at-issue exhibits. (See Docket Entries 171 at 1, 173 at 1, 176 at 2, 181 at 1.)

---

[1](...continued)
Valuation Charts and Data" in the Second Sealing Motion, that document appears identical to Defendants' Coupon Valuation Chart in the First Sealing Motion. (Compare Docket Entry 172-2, with Docket Entry 167-10.)

[2] Regardless of any differences in naming conventions among the Sealing Motions, the relief sought in the Second Sealing Motion fully overlaps with requests to seal in the First and Fourth Sealing Motions.

[3] Exhibit 11, as identified in the Third Sealing Motion, differs from the exhibit so identified in the First Sealing Motion. (Compare Docket Entry 175-11, with Docket Entry 167-11.)

-3-

Consistent with this Court's Local Rules, Defendants filed briefs in support of the Sealing Motions (Docket Entry 183 (the "First Sealing Brief"), Docket Entry 184 (the "Second Sealing Brief"), Docket Entry 185 (the "Third Sealing Brief")) (collectively, the "Sealing Briefs"). See M.D.N.C. LR 5.4(c) (requiring that party claiming confidentiality file brief in support of motion to seal by another party). The First Sealing Brief supports the First and Fourth Sealing Motions. (See Docket Entry 183 (addressing Docket Entries 171, 181).) The Second and Third Sealing Briefs correspond to the Second and Third Sealing Motions, respectively. (See Docket Entry 184 (addressing Docket Entry 173); Docket Entry 185 (addressing Docket Entry 176).)

## DISCUSSION

### I. Relevant Standards

Under Federal Rule of Civil Procedure 26 ("Rule 26"), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 provides for "[l]iberal discovery . . . for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984). The liberal scope of discovery necessitates that "the trial court . . . have the authority to issue protective orders conferred by Rule 26(c)." Id. Such an order may "limit[] the scope of

-4-

disclosure or discovery" or require the sealing of certain materials. Fed. R. Civ. P. 26(c).

"However, the authority granted to a court under Rule 26(c) to require special handling of information gathered during discovery is constrained by the public's right of access to judicial records." Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08CV00918, 2010 WL 1418312, at *7 (M.D.N.C. Apr. 2, 2010).[4] "[T]wo independent sources" provide the public with a right of access to such records: "the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "[Whereas] the common[-]law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted); see also United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003) ("Some . . . documents fall within the common[-]law presumption of access, while others are subject to the greater right of access provided by the First Amendment.").

One or both of those rights of access may apply to discovery materials (even when subject to a Rule 26(c) protective order) if such materials "constitute 'judicial documents and records.'"

---

[4] "This constraint arises because '[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern.'" Kinetic Concepts, Inc., 2010 WL 1418312, at *7 (quoting Landmark Commc'ns, Inc. v. Virginia, 435 U.S. 829, 839 (1978)).

-5-

Kinetic Concepts, Inc., 2010 WL 1418312, at *7 (quoting Stone, 855 F.2d at 180). Importantly, that designation requires more than "the mere filing of a document with a court." Spear v. Ernst & Young, (In re Policy Mgt. Sys. Corp.), Nos. 94-2254, 2341, 67 F.3d 296 (table), 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished). To qualify as judicial records, documents must "play a role in the adjudicative process, or adjudicate substantive rights." United States v. Appelbaum (In re United States), 707 F.3d 283, 290 (4th Cir. 2013); see also Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 576 (E.D. Va. 2009) (discussing public right of access to "materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been"). When no public right of access applies, Rule 26(c)'s "good cause" standard governs the request to seal or redact discovery material. See Hatch v. Demayo, No. 1:16cv925, 2020 WL 6161533, at *6 (M.D.N.C. Oct. 21, 2020). Under that standard, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

When a party proposes to seal judicial records to which a public right of access applies, the Court begins by "determin[ing] the source of the right of access with respect to each document," as "only then can it accurately weigh the competing interests at

-6-

Case 1:19-cv-00141-WO-LPA   Document 199   Filed 01/28/21   Page 6 of 18

stake." Virginia Dep't of State Police, 386 F.3d at 576 (internal quotation marks omitted). "[The common-law] presumption of access . . . can be rebutted if countervailing interests heavily outweigh the public interests in access." Rushford v. New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988). The relevant factors include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Under the more stringent First Amendment standard, the Court may seal material "only on the basis of a compelling governmental interest, and only if the denial [of access] is narrowly tailored to serve that interest." Stone, 855 F.2d at 180.

Under either standard, the Court evaluates the competing interests according to the following procedure. First, "it must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Virginia Dep't of State Police, 386 F.3d at 576. Next, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id. Those steps "ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id.

-7-

The legal framework described above applies to requests by a party to file a redacted document, i.e., a document sealed in part. See Moussaoui, 65 F. App'x at 889 ("As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the remainder of the document should remain sealed, in whole or in part."); see also Wolfe v. Green, Civ. Action No. 2:08-01023, 2010 WL 5175165, at *2-3 (S.D.W. Va. Dec. 15, 2010) (granting parties' joint motion to redact filings and holding that parties made necessary showing to address both common-law and first-amendment rights of access); Bethesda Softworks, LLC v. Interplay Entm't Corp., Civ. Action No. 09-2357, 2010 WL 3781660, at *9-10 (D. Md. Sept. 23, 2010) (treating motion to redact transcript as motion to seal). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888 (citing United States v. Pelton, 696 F. Supp. 156, 159 n. 2 (D. Md. 1986) (noting that court would "carefully compare the redacted version [of a transcript] to the unredacted version for accuracy and to determine whether all the proposed deletions are necessary")).

## II. Analysis

### A. Preliminary Matters

First, Defendants evidently seek to seal or redact fewer documents than the First, Third, and Fourth Sealing Motions

indicate.[5]  In particular, the First Sealing Brief purports to justify sealing or redacting only three exhibits (Dr. Grace's Rebuttal Expert Report, Defendants' Coupon Valuation Chart, and the Carolina Services Report), but the First and Fourth Sealing Motions (which the First Sealing Brief supports) together reference three additional exhibits.  (Compare Docket Entry 183, with Docket Entry 171, and Docket Entry 181.)  Similarly, despite the Third Sealing Motion's reference to seven exhibits, the corresponding Third Sealing Brief mentions only three: Dr. Grace's Rebuttal Expert Report, Defendants' Coupon Valuation Chart, and the Carolina Services Report.  (Compare Docket Entry 176, with Docket Entry 185.)[6]

Under this Court's Local Rules, briefs in support of motions to seal must explain "why sealing is necessary . . . for each document or group of documents."  M.D.N.C. LR 5.4(b) (emphasis added).  "[I]f the party claiming confidentiality fails to file a Brief in accordance with [M.D.N.C. LR 5.4(b)] within [the allotted time], the Motion to Seal will ordinarily be denied and the

---

[5] Conversely, the Second Sealing Brief and the Second Sealing Motion address identical documents.  (See Docket Entries 173, 184.)

[6] Furthermore, unlike the First and Second Sealing Motions, neither the First nor the Second Sealing Brief discusses the redaction of the Discovery Memorandum or the Certification Reply. (See Docket Entry 183 at 5; Docket Entry 184 at 6.)  Only the Third Sealing Brief reasserts the Third Sealing Motion's request to redact material from Defendants' Coupon Valuation Chart from the Expert Response.  (See Docket Entry 176 at 2; Docket Entry 185 at 6–7.)  Notwithstanding the lack of such request in the First and Second Sealing Briefs, the Court will consider each Sealing Brief's justifications as they relate to the redactions in any relevant brief.

-9-

materials will be unsealed." M.D.N.C. LR 5.4(d). Because the First and Third Sealing Briefs do not support the full scope of the First and Third Sealing Motions, Defendants have abandoned any request for relief as to any exhibits not addressed. More specifically, by omitting discussion of the Coupon Strategy and Industry Issues Report, the Coupon Processing Market Pricing Report, and the Excerpts from CCC, CMS, and IOS's Financial Statements, the First Sealing Brief fails to justify any sealing or redaction of those documents. (See Docket Entry 183 at 1–5.) The Third Sealing Brief's similar treatment of the CMS Market Share Report, the Coupon Processing Marketing Report, the Coupon Strategy and Industry Issues Report, and the Coupon Strategy Discussion Document warrants the same result as to those materials. (See Docket Entry 185 at 1–7.)

Second, despite the sometimes overlapping (and often confusing) labels used to identify documents that appear multiple times in the record, the Sealing Briefs collectively target the same three exhibits: Dr. Grace's Rebuttal Expert Report, Defendants' Coupon Valuation Chart, and the Carolina Services Report. (See Docket Entries 183, 184, 185; see also, e.g., Docket Entry 183-1 at 4 (clarifying that record contains several copies of Carolina Services Report, under various names). In other words, Dr. Grace's Rebuttal Expert Report, Defendants' Coupon Valuation Chart, and the Carolina Services Report remain the only distinct exhibits that (i) Plaintiffs moved to seal and (ii) Defendants addressed in a supporting brief.

-10-

Third, Plaintiffs filed the First, Second, and Third Sealing Motions under seal, in violation of this Court's Local Rules. In particular,

> [i]f a party seeks to file documents or portions of documents under seal, that party should file a redacted, public version of the documents on the Court's docket, and should separately file a Motion to Seal. Complete, unredacted versions of the document or documents shall be filed separately under seal. The Motion to Seal should include a <u>non-confidential</u> description of what is to be sealed, identifying the documents or portions thereof as to which sealing is requested.

M.D.N.C. LR 5.4(a) (emphasis added). Adherence to that procedure ensures that the public receives notice of a request to seal, a necessary step when a right of access applies to the documents at issue. See <u>Nuvasive, Inc. v. Kormanis</u>, No. 1:18-CV-282, 2019 WL 9633643, at *1 (M.D.N.C. Apr. 12, 2019) ("As the motion to seal has appeared on the public docket . . . , the public has had notice of the motion to seal[.]"). Despite Defendants' contrary assertions (<u>see, e.g.</u>, Docket Entry 185 at 6 ("[T]he public notice requirement is satisfied by the public filing of Plaintiffs' [Third Sealing Motion.]")), the public did not receive proper notice of the requests to seal in the First, Second, and Third Sealing Motions. (<u>See</u> Docket Entries 171 (under seal), 173 (same), 176 (same)). Moreover, also in violation of this Court's Local Rule 5.4(a), Plaintiffs failed to file a sealed, unredacted version of the Discovery Memorandum (Docket Entry 167).[7]

---

[7] Plaintiffs properly filed sealed, unredacted versions of the Discovery Reply (Docket Entry 182), Certification Reply (Docket Entry 173-1), and Expert Response (Docket Entry 176-1).

-11-

Accordingly, in light of the foregoing discussion, consideration of only the Fourth Sealing Motion's request to redact Dr. Grace's Rebuttal Expert Report and the Carolina Services Report (on the merits) may proceed at this time.[8] The Court cannot evaluate the request as to Defendants' Coupon Valuation Chart (or any portion of a brief quoting or discussing the same) because of the filing under seal of the only Sealing Motions to address those materials. As a result, the Court will deny the improperly sealed First, Second, and Third Sealing Motions. M.D.N.C. LR 83.4(a). Notwithstanding that denial, however, the Court will (i) consider the arguments in each of the Sealing Briefs, to the extent they bear on the request to redact Dr. Grace's Rebuttal Expert Report, the Carolina Services Report, and any brief that references either document and (ii) allow Defendants to move for relief regarding Defendants' Coupon Valuation Chart within seven days of this Order.[9]

---

[8] The Fourth Sealing Motion and the Fourth Sealing Brief call for disparate relief as to the same document. More specifically, the Fourth Sealing Motion asks to <u>seal</u> the Carolina Services Report, whereas the First Sealing Brief seeks to preserve the <u>redactions</u> of that document. (<u>Compare</u> Docket Entry 181 at 2 ("Plaintiffs move . . . to seal [the Carolina Services Report] in its entirety."), <u>with</u> Docket Entry 183 at 2 ("Defendants seek only to seal [sic] a redacted version of [the Carolina Services Report].").) Because the Court must assess alternatives to sealing, <u>Virginia Dep't of State Police</u>, 386 F.3d at 576, and because the First Sealing Brief appears to have modified the request to seal, the Court will consider only whether Defendants have justified the proposed redactions.

[9] Any motion should clarify the request for relief as to Defendants' Coupon Valuation Chart, because the First Sealing Motion and Brief diverge on that point. (<u>Compare</u> Docket Entry 171
(continued...)

**B. The Fourth Sealing Motion**

According to the First Sealing Brief, no public access right applies to Dr. Grace's Rebuttal Expert Report and the Carolina Services Report because Plaintiffs filed those documents in connection with the Discovery Motion, to which no public access right attaches. (Docket Entry 183 at 3–4.) For that reason, the First Sealing Brief claims to have satisfied the applicable Rule 26 "good cause" standard. (See id. at 4–5.) In contrast, the Second and Third Sealing Briefs contend that (i) the common-law right of access applies to documents (including Dr. Grace's Rebuttal Expert Report and the Carolina Services Report) filed in connection with the Certification Motion and the Expert Motion, and (ii) countervailing interests favoring non-disclosure outweigh the public's interest in access to those documents. (See Docket Entries 184 at 3–5, 185 at 3–6.)

As Defendants correctly have noted, the applicable sealing standard depends on the nature of the underlying motion. "Because discovery motions" often "involve procedural, rather than 'substantive' rights of the litigants," Kinetic Concepts, Inc., 2010 WL 1418312, at *9, "courts have found that no right of public access attaches to materials filed with discovery motions," Hatch,

---

⁹(...continued)
at 1-2 ("Plaintiffs move to seal only the financial figures contained in [Defendants' Coupon Valuation Chart.]"), with Docket Entry 183 at 5 ("Defendants respectfully request the Court permanently seal [Defendants' Coupon Valuation Chart.]").) Notably, a redacted (not entirely sealed) version of Defendants' Coupon Valuation Chart has appeared on the public docket since September 28, 2020. (See Docket Entry 167-10.)

2020 WL 6161533, at *5 (citing Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001)). In contrast, "as 'documents filed with the court that play a role in the adjudicative process,' briefs and exhibits filed in connection with a motion for class certification are considered 'judicial records' to which the common-law presumption of access attaches." Hatch v. Demayo, No. 1:16CV925, 2020 WL 1676953, at *2 (M.D.N.C. Apr. 6, 2020). The access right to documents filed in connection with a motion in limine likewise "arises under the common law," Lord Corp. v. S & B Tech. Prods., Inc., No. 5:09-CV-205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012). Because the common-law right of access attaches to exhibits associated with the Certification Reply and the Expert Response, the Court evaluates the proposed redactions to Dr. Grace's Rebuttal Expert Report and the Carolina Services Report under the common-law standard.[10]

All parties and the public have possessed access to the Fourth Motion to Seal since October 21, 2020. (See Docket Entry 181.) Accordingly, the Court finds all procedural prerequisites satisfied, as any interested persons have received "notice of the

---

[10] Although the less stringent Rule 26 standard may apply to Dr. Grace's Rebuttal Expert Report and the Carolina Services Report insofar as they relate to the Discovery Motion, any justification falling short of the common-law standard would result in disclosure elsewhere on the record (as publicly available attachments to the Certification Reply and the Expert Response) and effectively moot the sealing issue as concerns the Discovery Motion.

-14-

request to seal and a reasonable opportunity to challenge the request," Virginia Dep't of State Police, 386 F.3d at 576.

Each Sealing Brief offers a similar justification for the proposed redactions. According to the First Sealing Brief, disclosure of the redacted information in Dr. Grace's Rebuttal Expert Report and the Carolina Services Report "could expose [Defendant Inmar, Inc.] to competitive harm." (Docket Entry 183 at 1; see also id. at 5 (arguing that disclosure would limit bargaining power in a consolidated industry).) Echoing identical concerns, the Second and Third Sealing Briefs explain that "the information to be sealed includes confidential pricing, cost, margin, and revenue information for private companies that operate in a small, consolidated industry" (Docket Entry 185 at 1–2). (See also Docket Entry 184 at 1.)

Furthermore, each Sealing Brief advocates for the same proposed redactions of the Carolina Services Report. (See Docket Entry 183-3 at 5–12; Docket Entry 184-2 at 5–12; Docket Entry 185-2 at 5–12.) Each Sealing Brief likewise seeks to redact the same material from Dr. Grace's Rebuttal Expert Report. (See Docket Entry 183-2 at 2; Docket Entry 184-3 at 2; Docket Entry 185-4 at 2.) In all, the redactions amount to eight pages from the Carolina Services Report and one graphic from Dr. Grace's Rebuttal Expert Report.

The Supreme Court has recognized that court files should not serve "as sources of business information that might harm a litigant's competitive standing" and that the interest in

-15-

preventing such misuse may overcome "the common-law right of inspection." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978). The Fourth Circuit likewise has recognized limits on the common-law "right of access to court records," noting that "unfairly gaining a business advantage" falls outside the proper use of such records. In re Knight Pub. Co., 743 F.2d at 235. Even when the first-amendment right of access applies, this Court (per United States District Judge Catherine C. Eagles) previously has granted motions to seal "confidential marketing and sales information," the disclosure of which would have harmed "[t]he competitive and financial interest[s] of the parties." Bayer CropScience, Inc. v. Syngenta Crop Prot., LLC, 979 F. Supp. 2d 653, 656-57 (M.D.N.C. 2013).

Here, the proposed redactions concern sensitive business information, and the countervailing interest in preventing misuse of such information overrides the common-law right of access to the redacted portions of Dr. Grace's Rebuttal Expert Report and the Carolina Services Report (and references to those exhibit excerpts in the Discovery Reply and the Certification Reply). No less drastic alternative to redaction of the relatively limited excerpts from the two exhibits (and two briefs) that Defendants wish to shield from public view would suffice. Considering the sensitivity of the information, the versions of Dr. Grace's Rebuttal Expert Report and the Carolina Services Report attached to the Fourth Sealing Brief strike the appropriate balance between openness in court records and protection of business interests. Accordingly,

the Court will grant the Fourth Sealing Motion insofar as it seeks to limit public disclosure of certain portions of Dr. Grace's Rebuttal Expert Report and the Carolina Services Report.

## CONCLUSION

Under the circumstances, the protection of confidential business information outweighs the common-law right of access to some information in Dr. Grace's Rebuttal Expert Report and the Carolina Services Report. However, absent a properly (publicly) filed and supported motion to seal, the Court cannot grant similar relief as to Defendants' Coupon Valuation Chart.

**IT IS THEREFORE ORDERED** that the request to seal Defendants' Coupon Valuation Chart is **DENIED** without prejudice to Defendants' right to file a proper motion and supporting brief on or before February 4, 2021.

**IT IS FURTHER ORDERED** that the remainder of the First Sealing Motion (Docket Entry 171) and the entirety of the Second and Third Sealing Motions (Docket Entries 173, 176) are **DENIED.**

**IT IS FURTHER ORDERED** that the Fourth Sealing Motion (Docket Entry 181) is **GRANTED IN PART** such that Dr. Grace's Rebuttal Expert Report and the Carolina Services Report shall remain redacted on the public docket. The remainder of the Fourth Sealing Motion is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff shall file a sealed, unredacted version of the Discovery Memorandum (Docket Entry 167) in accordance with this Court's Local Rule 5.4(a).

**IT IS FURTHER ORDERED** that the Clerk shall strike the three Sealing Motions improperly filed under seal (Docket Entries 171, 173, 176). For administrative purposes only, Plaintiffs shall refile each Sealing Motion in accordance with this Court's Local Rule 5.4(a), as well as public, unredacted versions of the following Docket Entries: 167-11, 167-12, 175-3, 175-6, 175-9, and 175-11.

**IT IS FURTHER ORDERED** that the Clerk shall strike the following Docket Entries: 172-1, 172-3, 175-1, and 175-7. Plaintiffs shall refile Dr. Grace's Expert Rebuttal Report and the Carolina Services Report in a form consistent with Defendants' redactions and this Order's conclusions.

**IT IS FURTHER ORDERED** that the Clerk shall strike Docket Entry 179. Plaintiffs shall refile the Discovery Reply and related attachments in a form consistent with Defendants' redactions and this Order's conclusions (to include a public, unredacted version of Docket Entry 179-6).

                                        /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                            **United States Magistrate Judge**

January 28, 2021